UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORDIA
TAMPA DIVISION

| | |
|---|---|
| Patty Gray,<br><br>    Plaintiff,<br><br>v.<br><br>Consumer Financial Resources, LLC d/b/a Student Loan Resolve and Scott Freda,<br><br>    Defendants. | **COMPLAINT FOR DAMAGES UNDER THE TELEPHONE CONSUMER PROTECTION ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

## PARTIES

1. Plaintiff, Patty Gray, ("Patty"), is a consumer residing in Tampa, Florida at all times relevant to this action.

2. Defendants are Scott Freda and an inactive Texas business entity called Consumer Financial Resources, LLC doing business as Student Loan Resolve ("CFR").  Scott Freda owns, operates and directs marketing efforts for the telemarketing operation promoting student loan debt relief services to consumers using the Student Loan Resolve name.  See http://www.shopperapproved.com/customer-review/exchangemymail.com/4388615

3. Defendants use computerized telemarketing calls to promote their services.

4. Defendants repeatedly called Patty after she told them many times to stop calling.

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 et seq.

6. Pursuant to 28 U.S.C. §1391(b), venue is proper because the events giving rise to this case occurred in this district.

## STATEMENT OF FACTS

7. On or around March 31, 2014, Scott Freda and Consumer Financial Resources LLC d/b/a Student Loan Resolve began calling Patty Gray ("Patty") on her cell phone for the purpose of marketing CFR's student loan consolidation services.

8. During the initial conversation with CFR, Patty advised CFR that Patty did not want or have a need for CFR's student loan consolidation services. Patty asked CFR to remove her number from CFR's call list.

9. CFR continued to call Patty multiple times a day after Patty asked CFR to remove Patty from CFR's call list.

10. On or around April 1, Patty received a call from a female CFR representative. Patty reiterated that she did not want or have a need for CFR's student loan consolidation services. Patty renewed her request that CFR remove Patty's number from CFR's call list.

11. Later that same day, a male CFR representative called Patty. Patty advised the CFR representative that Patty had already asked to be removed from the CFR call list earlier that day. Patty asked the CFR representative how CFR got Patty's phone number and why CFR was so relentless in calling her multiple times a day. The CFR representative indicated that CFR may have gotten Patty's cell phone number from online job application websites.

12. Patty advised the CFR representative that Patty had not applied for any jobs online, but that Patty's daughter had been applying for jobs online. Patty further explained that Patty's daughter may have provided Patty's cell phone number so that prospective employers could

contact Patty's daughter.  Patty then renewed her request that CFR remove Patty's number from CFR's call list.

13. The CFR representative replied in a rude and sarcastic manner and told Patty that Patty should not allow her daughter to use Patty's cell phone.

14. On another occasion, CFR called Patty and advised Patty that she had given her authorization for CFR to call Patty because Patty had visited a website from which CFR obtained Patty's phone number.  Patty disputed CFR's contention and renewed her request that CFR stop calling her and remove Patty's name from CFR's call list.

15. On or around April 6, 2014, CFR called Patty.  Patty stated that she had previously asked CFR to stop calling her and indicated that she had retained an attorney.  The CFR representative hung up on Patty.

16. CFR continued to call Patty after she indicated that she had retained an attorney.

17. CFR has called Patty on her cell phone using an automated system.  When Patty answers the phone, the CFR call plays a recorded greeting that says, "Thank you for calling, please hold" (or similar wording), and then Patty is placed on hold for an available representative.

18. On or around April 7, 2014, one of the attorneys representing Patty in connection with this matter contacted CFR and spoke with a CFR supervisor named Olga.  Olga was apologetic for the numerous calls that Patty had received and for the fact that Patty was continuing to receive calls.  Olga indicated that only a supervisor could remove Patty's cell for number from the CFR call list.  According to Olga, if any CFR representative who was not a supervisor had told Patty that he or she would remove Patty's phone number from the CFR call list, that representation would have been false.  Olga also claimed that CFR had been

"having problems with the system." Olga advised Patty's attorney that Patty's phone number would be removed from CFR's call list.

19. None of the CFR representatives with whom Patty had spoken had transferred Patty to a CFR supervisor so that Patty's phone number could be removed from the CFR call list.

20. CFR continued to call Patty multiple times a day after the April 7, 2014 phone call between Patty's attorney and CFR representative Olga.

21. On one occasion, Patty advised CFR that Patty's attorney had called to request that Patty's phone number be removed from CFR's call list. Patty indicated that she was tracking the numerous CFR calls in the call block application on Patty's phone. The CFR representative replied, "We're recording the call too." The CFR representative indicated that a CFR supervisor would remove Patty's phone number from the CFR call list. Nevertheless, Patty continued to receive calls from CFR.

22. On or around April 16, 2014, Patty's attorney called CFR again and spoke with CFR supervisor Olga. Patty's attorney advised Olga that Patty was continuing to receive calls from CFR. Olga was again apologetic for the fact that CFR was continuing to call Patty. Olga explained that an IT issue was the cause for CFR's continued calling of Patty. According to Olga, CFR sometimes maintains the same lead's phone number in multiple "systems." In order for a supervisor to properly remove a lead's phone number from CFR's call list, the supervisor must check the multiple systems to remove the lead's phone number.

23. Patty's requests that CFR stop calling her were not limited in any way to calls generated by a particular "system" where Patty's cell phone number was stored. Patty's requests to CFR were unambiguous and clear that she wanted CFR to stop calling all together, regardless of the number of "systems" in which Patty's phone number was stored.

## COUNT ONE

### Violations of the Telephone Consumer Protection Act

24. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

25. Defendants willingly and knowingly violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time calling Plaintiff's cellular telephone using both an automatic telephone dialing system and artificial or pre-recorded voice without Plaintiff's prior express consent.

## JURY DEMAND

26. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

27. Plaintiff prays for the following relief:

   a. An order enjoining Defendant from placing further telephone calls to Plaintiff's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

   b. Judgment against Defendant for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Defendant made in violation of the TCPA.

   c. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Hyslip & Taylor, LLC LPA, Of Counsel

By:        /s/ John Murray
One of Plaintiff's Attorneys

2655 Lejeune Road PH1-D
Coral Gables, FL 33134
Tel: (305) 779-4818
jmurray640@gmail.com